Robert A. Naeve (State Bar No. 106095)
rnaeve@jonesday.com
Steven M. Zadravecz (State Bar No. 185676)
szadravecz@jonesday.com
Mark E. Earnest (CA State Bar No. 253490)
mearnest@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612.4408
Telephone:      (949) 851-3939
Facsimile:      (949) 553-7539

Attorneys for Defendant
WAL-MART STORES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR INDEPENDENT LIVING, INC., JANET BROWN, and LISA KILGORE on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WAL-MART STORES, INC., <br><br> Defendant. | **Lead Case No. C 12-3885 CRB** <br><br> **STIPULATION FOR ADDITIONAL STAY WHILE PURSUING RESOLUTION AND ORDER THEREON** <br><br> Judge:  Hon. Charles R. Breyer |
| GEORGE PARTIDA, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WAL-MART STORES, INC., <br><br> Defendant. | **Consolidated Case No. C 13-00305 YGR** |

Plaintiffs Center for Independent Living, Inc., Janet Brown, and Lisa Kilgore

(collectively, the "CIL Plaintiffs"), on the one hand, and defendant Wal-Mart Stores, Inc. ("Wal-

Mart"), on the other hand, enter into this Stipulation with reference to the following facts:

## RECITALS

A.      On April 3, 2013, this Court ordered the two cases – *Partida v. Wal-Mart Stores, Inc.* and *Center for Independent Living, Inc., et al. v. Wal-Mart Stores, Inc.* – consolidated for all purposes.  (*Docket No. 28.*)  The Court also granted the motion brought by counsel for the CIL Plaintiffs to be appointed interim class counsel pursuant to Federal Rule of Civil Procedure 23(g).  (*Docket No. 27.*)  In the order appointing interim class counsel, this Court gave counsel for the CIL Plaintiffs the authority to "[e]nter[] into stipulations, with opposing counsel, necessary for the conduct of the litigation" and designate "which attorneys may appear at settlement negotiations on behalf of the putative class and conducting settlement negotiations with defendant" on behalf of the CIL Plaintiffs and plaintiff Partida.  (*Id.*)

B.      On April 25, 2013, to accommodate the parties' mediation schedule, this Court agreed to modify its prior November 2012 order by continuing the deadline for the parties to attend mediation to June 7, 2013 and to report on the results of the mediation to June 14, 2013.  (*Docket No. 30.*)

C.      On June 7, 2013, the parties attended a full day of mediation before mediator David Rotman in San Francisco, California.  The mediation was fruitful and the parties made significant progress toward resolution.  To further efforts at resolution, the parties agreed to consider and evaluate detachable Point of Sale ("POS") devices that could be tethered to the front checkout aisles at a height more readily accessible to Plaintiffs, and which comply with all industry guidelines and are acceptable to Wal-Mart.  The parties also agreed to stay litigation and focus their actions on addressing the contingencies and conditions to facilitate a settlement in this case.

D.      Since the parties' mediation in June 2013, and consistent with the parties' continuing settlement negotiations and stipulations, this Court has granted several requests to stay this litigation, including continuing and then vacating the Case Management Conference during the stay.  (*Docket Nos. 32, 34, 36, 38.*)  This ongoing stay has allowed the parties to make significant progress toward a resolution of this matter and to explore options related to POS

devices that are agreeable to all parties.   For the Court's convenience, we detail below some of the efforts and progress made over the past year.

E.      Beginning immediately after the mediation in June 2013, the parties communicated consistently with each other, their clients, and several third-party vendors in an effort to find a POS device mount that satisfied the parties' concerns with, among other things, accessibility and security.  Those efforts included the evaluation of commercially available POS mounts that were attached to checkstands and other mounting options that utilize a swinging arm that could be positioned at a height more readily accessible to Plaintiffs.  Unable to find a commercially available mount that satisfied all of the parties' concerns, in August 2013, Wal-Mart worked with a third party to create a novel POS device mount design and prototype.

F.      The first POS prototype mount that was designed required significant modifications before it could even be installed and tested on Wal-Mart's existing checkstands. Indeed, there were a number of issues that foreclosed the possibility of the initially designed POS mount as a realistic solution.  Wal-Mart communicated consistently about these issues with Plaintiffs, and set to work on a new design and prototype.  In December 2013, Wal-Mart provided Plaintiffs with pictures of a second prototype that the Company had worked to develop.  Plaintiffs communicated that they were generally pleased with the design of this second prototype.  Wal-Mart continued to work with a third party to test and refine the second POS prototype, which included installing the prototype in a Wal-Mart store in Arkansas for testing.  An in-person test of the prototype in a store near Plaintiffs was delayed due to calendaring conflicts as well as the difficulty associated with uninstalling, shipping, and reinstalling the mount prototype.

G.      On April 2, 2014, the parties held their first in-person test of the new prototype POS device mount at a Wal-Mart store near Plaintiffs' residences.  Plaintiffs were present with their attorneys and a disability access expert.  Plaintiff's expressed that the POS prototype mount was a significant improvement over prior or alternative mounts and provided much better access to mobility impaired customers.  Following the inspection, Plaintiffs suggested some minor changes to the mount prototype.

H.      On May 8, 2014, the parties attended a second in-person test of the updated POS mount prototype at a second Wal-Mart store.  Plaintiffs again expressed their general acceptance and approval of the mount prototype with some suggested modifications.

I.      On June 3, 2014, this Court granted the parties' stipulation and extended the stay of litigation through September 5, 2014 so the parties could continue exploring resolution options (the "June 2014 Order").  (*Docket No. 40.*)  In addition, the Court: (a) confirmed the parties' stipulation that all communications between the parties shall be confidential, privileged, and protected by Rule 408 of the Federal Rules of Evidence; (b) ordered the parties to file a joint status report on or before August 29, 2014; and (c) vacated the Case Management Conference. (*Id.*)

J.      Since the June 2014 Order, the parties have continued to work diligently to find a suitable resolution to this matter.  For example, Wal-Mart has confirmed that the prototype mount meets data protection, security, and other standards required by the Payment Card Industry.  The parties have also discussed and agreed that the next step in the resolution process includes beta testing the POS prototype mount in select Wal-Mart stores for a period of 60 days.  To that end, Wal-Mart is in the process of securing the production of approximately 50 prototype mounts for installation at front end checkstands in the Wal-Mart stores where the beta test will be conducted. This process includes: (a) required internal testing by Consumer Testing Laboratory ("CTL"), which testing typically takes 30 business days but CTL has committed to complete its safety analysis in 15 business days; (b) the mount fabricator making any final adjustments as suggested by CTL, which will require a minimum of 15-30 days, however, if CTL finds significant number of exceptions or fails the prototype mount completely, the final adjustments by the fabricator could take longer; (c) final approval by CTL after adjustments are complete, requiring 3-5 business days; and (d) fabrication, production, and installation of the prototype mounts, which is estimated at 30 business days.  In short, the parties understand that production, shipping, and installation of the prototype mounts could itself take up to 90 days or more, but they are working to begin the in-store testing as soon as reasonably possible.  Based on the estimates provided

above, Wal-Mart presently anticipates beginning the POS prototype mount beta test in the Wal-Mart stores listed below as follows:

- Wal-Mart Division 1 Store #5072 located at 19503 Normandie Avenue, Torrance, California in December 2014 or January 2015;

- Wal-Mart Neighborhood Market Store #5611 located at 3112 Santa Rita Rd., Pleasanton, California in December 2014 or January 2015; and

- Another Wal-Mart store scheduled to be remodeled or a new store being prepared for grand opening that has not already received the current POS fixture package for installation in January 2015.

K. As shown above, the parties are committed to moving this matter forward toward resolution and hope to resolve the matter without the need for further formal discovery, motion practice or trial. In furtherance of this goal, the parties are committed to exchange proposals for resolving the remaining class issues in the case during the preparation and roll-out periods of the pilot testing program. Plaintiffs are frustrated with the fact that this process has been time-consuming and complicated but acknowledge the benefit of having Wal-Mart, in conjunction with Plaintiffs, outside vendors and consultants from the industry, take on the challenge of creating and developing an innovative new product custom-made to satisfy safety standards, security regulations, and Plaintiffs' demands. Unfortunately, no off-the-shelf product could satisfy the broad array of various independent requirements. Accordingly, at this juncture, the parties request an additional stay in this matter so that they can focus their efforts on continuing to explore avenues for settlement, including the resolution of the remaining class issues. The parties do not anticipate that beta testing of the prototype mount will be completed in this window, but have agreed that it is in all parties' interests to continue to update the Court on the good progress they are making. The parties agree to submit a formal joint report at the end of any approved stay to apprise the Court of the status of the parties' efforts to resolve the matter.

L. For the reasons outlined above, the parties submit that good cause exists to continue the stay in this case for approximately 90 days, keep off calendar the Case Management Conference and related date to submit a Case Management Conference Report, and set a date for

STIPULATION CV 12-3885 CRB

a formal report on the parties' progress toward resolution on or around January 16, 2015.

**STIPULATION**

Based on the facts stated above and subject to this Court's approval, the parties stipulate as follows:

1.    The parties shall file with this Court on or before **December 5, 2015** a joint report apprising the Court of the status of the parties' further settlement discussions, as well as any additional efforts to resolve the case during the stay.

2.    This action (meaning the consolidated cases of *Center for Independent Living v. Wal-Mart Stores, Inc.* and *Partida v. Wal-Mart Stores, Inc.*), including all discovery and motion practice, shall be stayed until **December 12, 2015.**

3.    Any and all communications by and between the parties, their attorneys and the mediator regarding or related to resolution and potential use of detachable POS devices shall be confidential, privileged, and protected by Rule 408 of the Federal Rules of Evidence.

4.    The Case Management Conference shall remain off calendar, and shall be reset by order of the Court following the parties' December 5, 2015 joint report on the status of settlement efforts.

**IT IS SO STIPULATED:**

Dated: August 29, 2014.                    Jones Day

                                           By:*/s/Steven M. Zadravecz*
                                               Steven M. Zadravecz
                                           Counsel for Defendant
                                           WAL-MART STORES, INC.


Dated: August 29, 2014.                    Disability Rights Advocates

                                           By:*/s/Larry Paradis*
                                               Larry Paradis
                                               Interim Class Counsel

1

<u>**ORDER**</u>

2

    The Court has read and considered the parties' Stipulation For Additional Stay While

3

Pursuing Resolution and finds that good cause exists to grant the relief requested.

4

**IT IS SO ORDERED**.

5

Dated:  September 4, 2014.                    By: _____

6



The Honorable Charles R. ...
United States ...
Northern ...

7

8

IRI-360066356v1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION CV 12-3885 CRB