1  Robert A. Naeve (State Bar No. 106095)
   rnaeve@jonesday.com
2  Steven M. Zadravecz (State Bar No. 185676)
   szadravecz@jonesday.com
3  Mark E. Earnest (CA State Bar No. 253490)
   mearnest@jonesday.com
4  JONES DAY
   3161 Michelson Drive, Suite 800
5  Irvine, CA  92612.4408
   Telephone:      (949) 851-3939
6  Facsimile:      (949) 553-7539

7  Attorneys for Defendant
   WAL-MART STORES, INC.

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  CENTER FOR INDEPENDENT LIVING, INC., JANET BROWN, and LISA KILGORE on behalf of themselves and all others similarly situated, | **Lead Case No. C 12-3885 CRB** |
| 13 | **STIPULATION FOR ADDITIONAL STAY WHILE PURSUING RESOLUTION AND ORDER THEREON** |
| 14 | |
| 15       Plaintiffs, | Judge:  Hon. Charles R. Breyer |
| 16  v. | |
| 17  WAL-MART STORES, INC., | |
| 18       Defendant. | |
| 19  GEORGE PARTIDA, on behalf of himself and all others similarly situated, | **Consolidated Case No. C 13-00305 CRB** |
| 20 | |
| 21       Plaintiff, | |
| 22  v. | |
| 23  WAL-MART STORES, INC., | |
| 24       Defendant. | |

25

26

27

28

1   Plaintiffs Center for Independent Living, Inc., Janet Brown, and Lisa Kilgore
2   (collectively, the "CIL Plaintiffs"), on the one hand, and Defendant Wal-Mart Stores, Inc. ("Wal-
3   Mart" or the "Company"), on the other hand, enter into this Stipulation For Additional Stay While
4   Pursuing Resolution with reference to the following facts:

5   **<u>RECITALS</u>**

6   A.      On April 3, 2013, this Court ordered the two cases – *Partida v. Wal-Mart Stores,*
7   *Inc.* and *Center for Independent Living, Inc., et al. v. Wal-Mart Stores, Inc.* – consolidated for all
8   purposes.  (*Docket No. 28.*)  The Court also granted the motion brought by counsel for the CIL
9   Plaintiffs to be appointed interim class counsel pursuant to Federal Rule of Civil Procedure 23(g).
10  (*Docket No. 27.*)  In the order appointing interim class counsel, this Court gave counsel for the
11  CIL Plaintiffs the authority to "[e]nter[] into stipulations, with opposing counsel, necessary for
12  the conduct of the litigation" and designate "which attorneys may appear at settlement
13  negotiations on behalf of the putative class and conducting settlement negotiations with
14  defendant" on behalf of the CIL Plaintiffs and plaintiff Partida.  (*Id.*)

15  B.      On April 25, 2013, to accommodate the parties' mediation schedule, this Court
16  agreed to modify its prior November 2012 order by continuing the deadline for the parties to
17  attend mediation to June 7, 2013 and to report on the results of the mediation to June 14, 2013.
18  (*Docket No. 30.*)

19  C.      On June 7, 2013, the parties attended a full day of mediation before mediator
20  David Rotman in San Francisco, California.  The mediation was fruitful and the parties made
21  significant progress toward resolution.  To further efforts at resolution, the parties agreed to
22  consider and evaluate detachable Point of Sale ("POS") devices that could be tethered to the front
23  end checkstands at a height more readily accessible to Plaintiffs, and which comply with all
24  industry guidelines and are acceptable to Wal-Mart.  The parties also agreed to stay litigation and
25  focus their actions on addressing the contingencies and conditions to facilitate a settlement in this
26  case.

27  D.      Since the parties' mediation in June 2013, and consistent with the parties'
28  continuing settlement negotiations and stipulations, this Court has granted several requests to stay

STIPULATION CV 12-3885 CRB

this litigation, including continuing and then vacating the Case Management Conference during the stay. (*Docket Nos. 32, 34, 36, 38, 40*.)  This ongoing stay has allowed the parties to make significant progress toward a resolution of this matter and to explore options related to POS mounting devices that are agreeable to all parties.  For the Court's convenience, we detail below some of the efforts and progress made during the stay.

E.      Beginning immediately after the mediation in June 2013, the parties communicated consistently with each other, their clients, and several third-party vendors in an effort to find a POS device mount that satisfied the parties' concerns with, among other things, accessibility and security.  Those efforts included the evaluation of commercially available POS mounts that were attached to checkstands and other mounting options that utilize a swinging arm that could be positioned at a height more readily accessible to Plaintiffs.  Unable to find a commercially available mount that satisfied all of the parties' concerns, Wal-Mart worked with a third party through the end of 2013 to create a novel POS device mount design and fabricating a working prototype.

F.      In Spring 2014, the parties held two in-person inspections of the new POS device mount prototype for Plaintiffs near their residences.  During the first inspection, on April 2, 2014, Plaintiffs were present with their attorneys and a disability access expert.  Plaintiffs expressed that the POS mount prototype was a significant improvement over prior or alternative mounts and provided much better access to mobility impaired customers.  Following the inspection, Plaintiffs suggested some minor changes to the mount prototype.  On May 8, 2014, the parties attended a follow-up inspection of the updated POS mount prototype at a second Wal-Mart store.  Plaintiffs again expressed their general acceptance and approval of the POS mount prototype with some suggested modifications.

G.      Throughout the Summer of 2014, the parties worked toward resolution.  For example, Wal-Mart confirmed that the POS mount prototype meets data protection, security, and other standards required by the Payment Card Industry.  The parties also discussed and agreed on the protocol that would be followed to evaluate the usability of the POS mount prototype, which included beta testing the device in select Wal-Mart stores for a period of approximately 60 days.

1    To that end, Wal-Mart began the process of securing the production of approximately 50 POS

2    mount prototypes for installation at front end checkstands in the Wal-Mart stores where the beta

3    test would be conducted.

4         H.    On September 4, 2014, this Court granted the parties' stipulation and extended the

5    stay of litigation through December 12, 2014 so the parties could continue exploring resolution

6    options (the "September 2014 Order"). (*Docket No. 42*.) In addition, the Court: (a) confirmed

7    the parties' stipulation that all communications between the parties shall be confidential,

8    privileged, and protected by Rule 408 of the Federal Rules of Evidence; (b) ordered the parties to

9    file a joint status report on or before December 5, 2014; and (c) vacated the Case Management

10   Conference. (*Id*.)

11        I.    Since the September 2014 Order, the parties worked diligently toward beta testing

12   the POS mount prototype. As detailed by the parties in the September 2014 Stipulation and

13   Order, the first step in the beta testing process was internal testing of the POS mount prototype by

14   Consumer Testing Laboratory ("CTL"), which testing is required before Wal-Mart can roll out a

15   product or device of this kind on a large scale.

16        J.    Unfortunately, the process stopped at the CTL testing phase. That's because,

17   while the POS mount prototype passed many tests, it failed several key tests, which illustrated

18   that the device could not withstand significant and extended usage that is typical in a Wal-Mart

19   store. Wal-Mart communicated the test failures to Plaintiffs as well as the fact that, based on

20   those test failures, Wal-Mart could not move forward with the then-current design concept or the

21   beta testing as proposed in the September 2014 Order.

22        K.    Despite these setbacks, Wal-Mart has continued its efforts to create a POS

23   mounting device. In particular, Wal-Mart engaged another contractor who specializes in

24   designing hinges and with significant effort, that contractor created the designs for an alternative

25   POS mounting prototype. In furtherance of its efforts, at this stage in the process, Wal-Mart's

26   contractors have drafted mock-up design drawings showing the new, alternative POS mounting

27   prototype, as well as the proposed modifications to address the design failures in the first

28   prototype. Wal-Mart anticipates sharing these drawings with Plaintiffs after the parties executed

a stipulated protective order.  Based on preliminary discussions, the parties believe they can continue to move forward with this new, alternative POS mounting prototype.

L.       The parties are committed to moving forward with the full testing of the alternative POS mounting prototype.  In this regard, the parties believe that the following steps should take place:

(1)  Once Plaintiffs have an opportunity to comment on the design drawings, Wal-Mart anticipates that it will fabricate working prototypes for final approval by CTL.  At this juncture, Wal-Mart cannot provide a date certain on which the fabrication for the prototypes will be ready for testing because the timing of such production is in the hands of two separate third-party contractors.  That said, based on the information supplied to Wal-Mart by its contractors, the Company estimates that the initial prototypes will be fabricated between late December 2014 and late January 2015.

(2)   Assuming that the new prototype passes CTL testing, Wal-Mart has committed to installing the new prototype for Plaintiffs and their counsel to inspect at a Wal-Mart store in Northern California.  For the reasons identified above, Wal-Mart cannot commit to a date certain for the installation or inspection at this time.  However, based on estimates provided to the Company by its contractors, Wal-Mart anticipates that the prototype will be ready to be installed and inspected by Plaintiffs in the first quarter of 2015.

(3)   If the inspection is successful and leads to consensus by Plaintiffs, Wal-Mart will select several stores in which to conduct a 60-day beta testing of the new POS mount prototype.  Wal-Mart cannot provide a date certain on which the beta testing will commence because it cannot control the fabrication process or the length of time it will take to fabricate the necessary number of prototypes for the beta test.  However, once the steps outlined above are completed, Wal-Mart anticipates that it will be in a better position to obtain that information from its contractors.

M.       As shown above, the parties are committed to moving this matter forward toward resolution and hope to resolve the matter without the need for further formal discovery, motion practice or trial.  In furtherance of this goal, the parties are committed to exchange proposals for

STIPULATION CV 12-3885 CRB

resolving the remaining class issues in the case during the preparation and roll-out periods of the beta testing program.  Accordingly, at this juncture, the parties request an additional 90-day stay in this matter so that they can focus their efforts on continuing to explore avenues for settlement, including the evaluation of the new POS mounting prototype and the remaining settlement issues. The parties do not anticipate that final approval and beta testing of the new POS mount prototype will be completed in this 90-day window, but have agreed that it is in all parties' interests to continue to update the Court on the good progress they are making.  The parties agree to submit a formal joint report at the end of any approved stay to apprise the Court of the status of the parties' efforts to resolve the matter.

   N. For the reasons outlined above, the parties submit that good cause exists to continue the stay in this case for approximately 90 days, keep off calendar the Case Management Conference and related date to submit a Case Management Conference Report, and set a date for a formal report on the parties' progress toward resolution on or around March 13, 2015.

## **STIPULATION**

   Based on the facts stated above and subject to this Court's approval, the parties stipulate as follows:

1. The parties shall file with this Court on or before **March 13, 2015** a joint report apprising the Court of the status of the parties' further settlement discussions, as well as any additional efforts to resolve the case during the stay.

2. This action (meaning the consolidated cases of *Center for Independent Living v. Wal-Mart Stores, Inc.* and *Partida v. Wal-Mart Stores, Inc.*), including all discovery and motion practice, shall be stayed until **March 20, 2015.**

3. Any and all communications by and between the parties, their attorneys and the mediator regarding or related to resolution and potential use of POS devices and POS device mounts shall be confidential, privileged, and protected by Rule 408 of the Federal Rules of Evidence.

4. The Case Management Conference shall remain off calendar, and shall be re-set by order of the Court following the parties' March 13, 2015 joint report on the status of

1    settlement efforts.

2    **IT IS SO STIPULATED.**

3

4    Dated: December 5, 2014.                Jones Day

5                                            By: */s/ Steven M. Zadravecz*
                                                 Steven M. Zadravecz
6                                            Counsel for Defendant
                                             WAL-MART STORES, INC.

7

8    Dated: December 5, 2014.                Disability Rights Advocates

9                                            By: */s/ Larry Paradis*
                                                 Larry Paradis
10                                                Interim Class Counsel

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION CV 12-3885 CRB

1

### <u>ORDER</u>

2

  The Court has read and considered the parties' Stipulation For Additional Stay While

3

Pursuing Resolution and finds that good cause exists to grant the relief requested.

4

**IT IS SO ORDERED**.

5

Dated:  December 15,  2014.                      By: _____

6



The Honorable Charl...
United S...
Northe...

7

8

IRI-360069407v3

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION CV 12-3885 CRB